UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

CHRIS ALLEN BLOSSER,                      Case No. 07-14031

        Plaintiff,                     Thomas L. Ludington
                                      United States District Judge

vs.

                                     Michael Hluchaniuk
TODD GILBERT, *et al.*,                    United States Magistrate Judge

        Defendants.
_____/

## REPORT AND RECOMMENDATION
## DEFENDANT LLOYD'S MOTION TO DISMISS (Dkt. 27)

## I.    PROCEDURAL HISTORY

In this case, plaintiff seeks money damages for alleged constitutional violations pursuant to 42 U.S.C. § 1983.  (Dkt. 1).  Plaintiff claims that certain defendants used excessive force during his arrest and caused him to suffer significant injuries and that other defendants failed to pursue timely and adequate medical care, causing him to suffer permanent disfiguration and disability.  *Id*.

Defendant Lloyd filed a motion to dismiss on April 9, 2008, to which hundreds of pages of plaintiff's medical records were attached.  (Dkt. 27). Plaintiff filed a response to defendant's motion to dismiss, also attaching various exhibits and records.  (Dkt. 29).  Defendant filed a reply on May 12, 2008.  (Dkt.

35).  On May 6, 2008, defendants Gilbert and Carpentier moved to extend all deadlines by 60 days, which request was granted by the Court, extending discovery until July 14, 2008.  (Dkt. 31, 32).  On June 5, 2008, defendant Lloyd filed a motion to stay discovery arguing that plaintiff's discovery efforts are a "waste of judicial resources and the parties time and resources" given the pending motion to dismiss.  (Dkt. 37).  The undersigned concluded that a stay of discovery was not appropriate in this case because defendant Lloyd's motion to dismiss was based almost entirely on his claim that there is "no medical evidence that surgery was ever recommended for Plaintiff's ruptured biceps tendon or that surgery would have been performed had Plaintiff been referred to the orthopedic surgeon on January 5, 2006," and that all the evidence contradicted plaintiff's claims.  (Dkt. 39).  Thus, the undersigned concluded that defendant Lloyd's motion to dismiss, despite its label, was necessarily a motion for summary judgment because he relied extensively on materials outside plaintiff's complaint.  (Dkt. 39).

Based on a motion from plaintiff, discovery was extended until November 24, 2008.  (Dkt. 61).  Plaintiff also filed a motion to withdraw his response to defendant Lloyd's motion to dismiss, so that he could re-file it after the close of discovery.  (Dkt. 54).  The undersigned ordered that plaintiff could file a supplemental brief in opposition to defendant Lloyd's motion to dismiss, after the

close of discovery, but no later than December 15, 2008.  (Dkt. 66).  Plaintiff filed

a supplemental brief on November 12, 2008.  (Dkt. 72).  On November 24, 2008,

defendant Lloyd filed a reply to plaintiff's supplemental brief.  (Dkt. 73).  Plaintiff

filed reply on December 5, 2008.  (Dkt. 75).

For the reasons set forth below, the undersigned **RECOMMENDS** that

defendant Lloyd's motion to dismiss, which is being treated as a motion for

summary judgment, be **GRANTED**.

## II.     STATEMENT OF FACTS

### A.     Complaint

Plaintiff alleges that, during the course of an arrest, after his vehicle was

pulled over, defendants Gilbert and Carpentier used excessive force in dragging

him through his vehicle window, despite knowing that his legs were caught under

the steering wheel.  (Dkt. 1).  Plaintiff alleges that defendants Gilbert and

Carpentier continued to pull on plaintiff's arm until he heard a popping sound and

then was "extracted" from his vehicle.  (Dkt. 1).  Plaintiff also alleges that

defendants Gilbert and Carpentier "forcefully twisted" his injured arm behind his

back and handcuffed him.  (Dkt. 1).  Plaintiff was transported to the emergency

room at Hurley Medical Center and was diagnosed with a ruptured long head left

biceps tendon.  (Dkt. 1).  Plaintiff was given a sling and pain medication.  (Dkt. 1).

According to plaintiff, the emergency room physician told plaintiff that surgery would be required right away to successfully reconnect the tendon to the bone. Plaintiff was discharged with instructions to make an appointment in the orthopedic clinic on January 5, 2006. (Dkt. 1). The emergency room physician personally gave defendant Carpentier a copy of the discharge instructions. (Dkt. 1). Plaintiff alleges that it was objectively unreasonable for defendants Carpentier and Gilbert to pull him from his vehicle in the manner they did and to handcuff him knowing his arm was injured.

Plaintiff also claims that the medical staff at the Genesee County Jail Medical Department acknowledged the discharge instructions and that an appointment needed to be made. On January 3, 2006, plaintiff alleges that he told defendant Lloyd that he needed to see an orthopedic surgeon for the biceps tendon surgery and that defendant Lloyd said he was aware of the discharge instructions. Plaintiff's appointment was not made and according to plaintiff, defendant Lloyd said he was "too busy" and "not to worry about it," despite plaintiff's explanation that he needed the surgery right away. Plaintiff continued to question the medical staff and, on February 1, 2006, defendant Lloyd finally submitted a consult and surgical repair request on plaintiff's behalf. (Dkt. 1).

Plaintiff was examined by Dr. David Fernandez on February 9, 2006. (Dkt.

1).  Among other things, plaintiff alleges that Dr. Fernandez told him that because of the delay in treatment, surgery would only be performed if plaintiff had a very high physical or athletic demand.  Plaintiff asserts that Dr. Fernandez told him that if a tendon is not repaired immediately, over time it will retract and become irreparable.  According to plaintiff, Dr. Fernandez would not perform tendon repair surgery on plaintiff due to the delay.  Plaintiff was given a prescription for physical therapy and pain medication.  Plaintiff claims that Dr. Lloyd's failure to follow through with timely surgical intervention for him violated plaintiff's Eighth Amendment rights, has caused him to be unable to work, participate in sports, or doing any physically demanding activity, and has left him permanently disfigured.

B.    Defendant's Position

In his motion to dismiss, defendant Lloyd relies on both plaintiff's medical records and a letter from Dr. Fernandez.  Thus, as stated above, the motion to dismiss will be treated as a motion for summary judgment.  Defendant argues that plaintiff's claim for deliberate indifference must fail because there is no medical evidence establishing that surgery was ever recommended to treat plaintiff's ruptured biceps tendon.  (Dkt. 27, p. 5).  Rather, defendant suggests that the medical evidence shows that plaintiff would not have been a surgical candidate even if Dr. Fernandez had seen him on the date of his injury.  (Dkt. 27, citing, Ex.

B).  Even if plaintiff did require surgery, defendant argues that plaintiff has no evidence that defendant Lloyd was aware of this need and was deliberately indifferent to it.  Rather, any claim is, at best, merely medical malpractice.

Defendant Lloyd also suggests that the Court should reject plaintiff's objections to Dr. Fernandez's letter because it was perfectly appropriate for defendant Lloyd, as plaintiff's treating physician, to communicate with Dr. Fernandez, who also treated plaintiff.  (Dkt. 33).  Further, according to defendant, plaintiff has waived any privilege by bringing suit.  (Dkt. 33).  Defendant also argues that plaintiff may dispute what Dr. Fernandez says in his letter, but plaintiff has failed to present any admissible evidence to support his contention that Dr. Fernandez would have repaired his ruptured biceps tendon if Dr. Lloyd had referred him earlier.  (Dkt. 73, pp. 4-5).  Defendant argues that even if a jury does not believe Dr. Fernandez, his treatment note does not support a finding that any delay by defendant Lloyd was the basis for Dr. Fernandez's decision to treat him non-operatively.  (Dkt. 73, p. 5).

Defendant also points out that plaintiff offers nothing but his own affidavit to support his claims about what Dr. Barach (the emergency room physician) recommended and, even if Dr. Barach did recommend surgery, plaintiff offers no evidence to support a finding that *Dr. Fernandez* would have considered plaintiff

to be a surgical candidate.  (Dkt. 73, p. 6).  Finally, nothing in plaintiff's discharge notes support his contention that he was in fact found to be a surgical candidate. All the discharge notes state is that plaintiff needed a follow-up appointment. (Dkt. 73, p. 6).   In summary, defendant Lloyd maintains that plaintiff has not come forward with any evidence that Dr. Fernandez would have performed surgery absent the delay by Dr. Lloyd.

Defendant Lloyd also suggests that plaintiff has not come forward with any evidence, circumstantial or otherwise, tending to show that Dr. Lloyd had a culpable state of mind.  (Dkt. 73, pp. 7-8).  Rather, plaintiff claims that *he* informed Dr. Lloyd that he needed surgery, as told to plaintiff by Dr. Barach. Defendant asserts that this is inadmissible hearsay and amounts to nothing more than a disagreement about the course of treatment, which does not rise to the level of an Eighth Amendment violation.  (Dkt. 73, p. 7).  Moreover, assuming that plaintiff did require immediate surgery, plaintiff offers no evidence that Dr. Lloyd knew that.  (Dkt. 73, p. 8).   Dr. Lloyd attested that he was unaware of any immediate need for plaintiff to have surgery and he further argues that his referral for a surgical consult is not evidence that he "knew" plaintiff required "immediate surgery."  (Dkt. 73, p. 8; Ex. A).

Report and Recommendation
Defendant Lloyd's Motion to Dismiss
*Blosser v. Gilbert*; 07-14031

C.    <u>Plaintiff's Position</u>

In his first response, plaintiff restates the allegations in his complaint.  (Dkt. 29).  Further, he argues that Dr. Fernandez's March 28, 2008 letter to defendant Lloyd was an improper "ex parte" communication and that Dr. Fernandez's letter is inconsistent with what plaintiff was told previously by Dr. Fernandez.  (Dkt. 29; Dkt. 72).  Plaintiff argues that Dr. Lloyd's affidavit and Dr. Fernandez's letter are insufficient to establish that defendant is entitled to summary judgment.  (Dkt. 72, p. 2).  Rather, plaintiff argues that there are genuine issues of material fact as to whether Dr. Fernandez declined to perform surgery on him because of the delay in treatment, citing his own affidavit in support of his version of the conversation with Dr. Fernandez.  (Dkt. 72, pp. 2-3, Ex. F).  Plaintiff also suggests that a material question of fact exists because Dr. Fernandez's letter is not consistent with his treatment notes, which plaintiff argues support his version of events. (Dkt. 71, p. 3).

Plaintiff maintains that defendant Lloyd failed to pursue a timely appointment for him, which cause him to suffer permanent disfigurement, disability, and mental anguish.  (Dkt. 29).  Plaintiff further claims that it is "common medical knowledge, which should be known to every medical practitioner, including the Defendant, that severed tendons must be repaired in a

timely manner, because over time the severed tendons will retract, and may become irreparable." (Dkt. 29, p. 4; *see also* id. at 5, citing, *Johnson v. Karnes, 398 F.3d 868, 874 (6th Cir. 2005)*). Plaintiff also urges that defendant Lloyd knew that his biceps tendon required repair as evidenced through the "consult and surgical repair request" in which he wrote that plaintiff had an "obvious ruptured biceps tendon." (Dkt. 29, p. 4, Ex. C; Dkt. 72, p. 5).

Plaintiff argues that it is "virtually impossible for defendant Lloyd to refer the Plaintiff to a specialist while maintaining at the exact same time that he had absolutely no knowledge of the plaintiff's injuries, surgical need and discharge instructions." (Dkt. 72, pp. 5-6). Plaintiff suggests that defendant's knowledge can be inferred from this circumstantial evidence and asserts that defendant Lloyd is attempting to escape liability by refusing to verify the underlying facts pertaining to a risk that he strongly suspects existed. (Dkt. 72, p. 6). Plaintiff argues that this is not merely a difference of medical opinion because the evidence shows that plaintiff was a surgical candidate, as diagnosed and ordered by Dr. Barach. (Dkt. 72, p. 7; *see also* Ex. F, plaintiff's affidavit).

## III.    DISCUSSION

### A.    Standard of Review

Summary judgment is appropriate under Rule 56(b) "if the pleadings, the

discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In *Copeland v. Machulis*, 57 F.3d 476, 478-79 (6th Cir. 1995), the court stated the standard for deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the non-moving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

A genuine issue of material fact exists only when, assuming the truth of the non-moving party's evidence and construing all inferences from that evidence in the light most favorable to the non-moving party, there is sufficient evidence for a trier of fact to find for the non-moving party. *Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

   "In deciding a motion for summary judgment, [the] court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). This is not to

say that some credibility determinations are beyond what is appropriate in deciding a motion for summary judgment. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 127 S.Ct. 1774, 1776 (2007).

Rule 56 limits the materials the Court may consider in deciding a motion under the rule: "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits." *Copeland v. Machulis*, 57 F.3d 476, 478 (6th Cir. 1995) (citation omitted). Moreover, affidavits must meet certain requirements:

> A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated. If a paper or part of a paper is referred to in an affidavit, a sworn or certified copy must be attached to or served with the affidavit. The court may permit an affidavit to be supplemented or opposed by depositions, answers to interrogatories, or additional affidavits.

Fed.R.Civ.P. 56(e)(1). In accordance with Rule 56(e), the Sixth Circuit has held "that documents submitted in support of a motion for summary judgment must satisfy the requirements of Rule 56(e); otherwise, they must be disregarded."

*Moore v. Holbrook,* 2 F.3d 697, 699 (6th Cir. 1993). Thus, in resolving a Rule 56

motion, the Court should not consider unsworn or uncertified documents, *Id.*,

unsworn statements, *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 968-969

(6th Cir. 1991), inadmissible expert testimony, *North American Specialty Ins. Co.*

*v. Myers*, 111 F.3d 1273, 1280 (6th Cir. 1997), or hearsay evidence, *Hartsel v.*

*Keys*, 87 F.3d 795, 799 (6th Cir. 1996); *Wiley v. United States*, 20 F.3d 222,

225-226 (6th Cir. 1994). *See Tolliver v. Federal Republic of Nigeria*, 265

F.Supp.2d 873, 879 (W.D. Mich. 2003). Thus, "[a] party opposing a motion for

summary judgment cannot use hearsay or other inadmissible evidence to create a

genuine issue of material fact." *Id.*, quoting, *Sperle v. Michigan Dept. of*

*Corrections*, 297 F.3d 483, 495 (6th Cir. 2002) (citation and quotation marks

omitted).

     B.    <u>Deliberate Indifference</u>

     The Supreme Court has recognized the responsibility of the courts "to

scrutinize claims of cruel and unusual confinement." *Rhodes v. Chapman*, 452

U.S. 337, 352 (1981). Included as a type of conduct that violates the Eighth

Amendment is a prison official's deliberate indifference to a prisoner's serious

medical needs. *See e.g.*, *Estelle v. Gamble*, 429 U.S. 97 (1976); *Westlake v. Lucas*,

537 F.2d 857, 860 (6th Cir. 1976). To succeed on a claim of deliberate

indifference, plaintiff must satisfy two elements, an objective one and a subjective one.  He must show that he had a serious medical need and he must show that a defendant, being aware of that need, acted with deliberate indifference to it. *Wilson v. Seiter*, 501 U.S. 294, 300 (1991).

      1.    Serious medical need

A medical need is "serious" if it has been diagnosed by a physician as requiring treatment or is so obvious that a lay person would easily recognize the necessity for a doctor's attention. *Monmouth County Correctional Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir.), cert. denied, 486 U.S. 1006 (1988).  An Eighth Amendment claim may be premised on deliberate indifference to exposing an inmate to an unreasonable risk of serious harm in the future. *Dodson v. Wilkinson*, 2008 WL 5378017, *3 (6th Cir. 2008), citing, *Helling v. McKinney*, 509 U.S. 25, 36 (1993).  A delay in access to medical attention, however, can violate the Eighth Amendment when it is "tantamount to 'unnecessary and wanton infliction of pain.'" *Hill v. DeKalb Regional Youth Detention Center*, 40 F.3d 1176, 1187 (11th Cir. 1994), (citations omitted), overruled on other grounds, *Hope v. Pelzer*, 536 U.S. 730, 739 (2002).  Further, a claim of inadequate medical treatment may state a constitutional claim if the treatment rendered is "so woefully inadequate as to amount to no treatment at all." *Westlake v. Lucas*, 537 F.2d 857,

Report and Recommendation
Defendant Lloyd's Motion to Dismiss
*Blosser v. Gilbert*; 07-14031

860-861 (6th Cir. 1976). The "seriousness" of an inmate's medical needs also may be decided by reference to the effect of delay in treatment. *Hill*, 30 F.3d at 1188. Where the delay results in an inmate's suffering "a life-long handicap or permanent loss, the medical need is considered serious." *Id.* (citation omitted). Notably, "[t]he tolerable length of delay in providing medical attention depends on the nature of the medical need and the reason for the delay." *Id.* (citation omitted). Thus, a "delay in medical treatment must be interpreted in the context of the seriousness of the medical need, deciding whether the delay worsened the medical condition, and considering the reason for delay." *Id.* at 1189.

"[A]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." *Dodson*, at *4, quoting, *Napier*, 238 F.3d at 742. As the Sixth Circuit explained in *Blackmore v. Kalamazoo Co.*, 390 F.3d 890, 898 (6th Cir. 2004):

> *Napier* applies where the plaintiff's "deliberate indifference" claim is based on the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious. In such circumstances, medical proof is necessary to assess whether the delay caused a serious medical injury.

Here, plaintiff's claim is really that his condition was not treated adequately, not

that his condition was so "obvious" that someone should have noticed it, but failed to do so.

As stated in *Monmouth*, a serious medical need is one that has been diagnosed by a physician *as requiring treatment*.  Notably, plaintiff does not claim that there was any delay in his receipt of pain medication or physical therapy or that any delay in receiving such treatment caused him any harm or injury.  Rather, plaintiff's claim is limited to the allegation that the delayed orthopedic referral caused him to be ineligible for necessary and previously recommended surgery.

Here, there is no question that plaintiff's condition required, and that he received, treatment.  Plaintiff received emergency treatment on the date he sustained his injury (December 27, 2005) and was seen in the jail medical clinic for a follow-up on January 5, 2006, per the emergency room discharge instructions.  (Dkt. 27, Ex. A1, pp. 18, 43-44).  As noted above, on February 1, 2006, Dr. Lloyd referred plaintiff to an orthopedic specialist for evaluation.  (Dkt. 27, Ex. A2, p. 86).  Plaintiff was evaluated by Dr. Fernandez on February 9, 2006.  (Dkt. 27, Ex. A3, pp. 106-107).  Plaintiff then underwent physical/occupational therapy, as recommended by Dr. Fernandez.  (Dkt. 27, Ex. A3, pp. 108-110, 118-125).  On February 15, 2006, Dr. Lloyd noted that, while plaintiff's range of motion was still limited, he was improving.  (Dkt. 27, Ex. A3, p. 114).  Plaintiff's

Report and Recommendation
Defendant Lloyd's Motion to Dismiss
*Blosser v. Gilbert*; 07-14031

medical records show regular and effective treatment, monitoring, and follow up.

Plaintiff's arguments to the contrary are unavailing in that he relies, almost exclusively, on his own affidavit, which is based on inadmissible hearsay statements of Dr. Barach and Dr. Fernandez,[1] which statements are not supported by the medical records. *See* Fed.R.Civ.P. 56(e). Nothing in Dr. Barach's treatment notes or the discharge instructions suggest that plaintiff required surgery, let alone immediate surgery. (Dkt. 27, Ex. A1, pp. 43-46; Ex. A3, pp. 106-107). While plaintiff relies heavily on the statement in Dr. Fernandez's treatment note that – "this patient has been explained about being delayed on his biceps tendon rupture which is generally not treated if this patient does not have very high physical or athletic demand" – there is no mention in this note or any other admissible evidence before the Court that plaintiff would have been a surgical candidate if his follow-up appointment has been scheduled earlier. Thus, the undersigned suggests that there is no evidence that any delay in medical treatment "worsened the medical condition" at issue here. *See Hill, supra.*

Plaintiff relies on *Johnson v. Karnes*, 398 F.3d 868 (6th Cir. 2005) to

_____

[1] Likewise, the undersigned suggests that Dr. Fernandez's letter, on which defendant's relies, is also unauthenticated and inadmissible for purposes of summary judgment.

support his claim that his injury and need for surgery was "obvious" and therefore, he has established a serious medical need.  Plaintiff case is easily, and significantly distinguishable from *Johnson*.  In *Johnson*, the plaintiff's written requests for medical treatment (which were ignored by the medical staff) expressly stated that the tendons in his hand were completely severed and he provided an affidavit from the emergency room physician who initially treated his injuries stating that it "is common medical knowledge which should be known to every medical practitioner that severed tendons must be repaired in a timely manner..." *Id*. at 874.  In this case, plaintiff has not shown that a rupture or tear in the biceps tendon is the same as a "severed" hand tendon.[2]  More importantly, plaintiff has not submitted any such affidavit from a treating physician or expert witness.  The undersigned suggests, therefore, that plaintiff has failed to come forth with any "verifying medical evidence" in accordance with *Napier* and cannot satisfy the "serious medical need" prong of the deliberate indifference standard to support his delayed treatment claim.

---

[2]  The American Academy of Orthopedic Surgeons explains that nonsurgical treatment is usually all that is required for a proximal biceps tendon tear (the long head biceps tendon) and that surgical repair of a "complete tendon tear" can be done for "younger individuals whose work involves heavy labor or lifting." http://orthoinfo.aaos.org/topic.cfm?topic=A00031.  Nothing in plaintiff's medical records or in the evidence proffered by plaintiff suggests a "complete tendon tear."

2.      Subjective prong

Even if plaintiff could establish a serious medical need, he has failed to satisfy the second element of *Wilson*, which requires a showing that defendant acted with deliberate indifference.  "Deliberate indifference" has been variously defined by the federal courts that have considered prisoners' Eighth Amendment claims, but all agree that it is more than mere negligence and less than actual intent in the form of "malicious" or "sadistic" action. *Farmer v. Brennan*, 511 U.S. 825, 861 (1994); *see also Estelle*, 429 U.S. at 105-106 (a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim under the Eighth Amendment; "medical malpractice does not become a constitutional violation merely because the victim is a prisoner"); *Sanderfer v. Nichols*, 62 F.3d 151, 154 (6th Cir. 1995) (deliberate indifference is the equivalent of "criminal recklessness, which requires a subjective showing that the defendant was aware of the risk of harm"); *Gibson v. Foltz*, 963 F.2d 851, 853 (6th Cir. 1992) ("[o]bduracy or wantonness, not inadvertence or good faith error, characterizes deliberate indifference.").

As noted in *Estelle*, "[i]n order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* at 106.  An allegation of mere negligence in diagnosis

or treatment is not actionable under § 1983.  *Estelle v. Gamble, supra*; *Byrd v. Wilson*, 701 F.2d at 595 n. 2.  In *Whitley v. Albers*, 475 U.S. 312 (1986), the Court held that "[i]t is obduracy and wantonness, not inadvertence or error in good faith" that violates the Eighth Amendment in "supplying medical needs."  "A defendant must purposefully ignore or fail to respond to a prisoner's pain or possible medical need in order for deliberate indifference to be established." *McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992).  The deliberate indifference standard requires knowledge of the particular medical condition in order to establish an intent, ("a sufficiently culpable state of mind," *Wilson*, 501 U.S. at 298), to deny or to delay purposely "access to medical care" or intentionally to interfere "with the treatment once prescribed," *Estelle*, 429 U.S. at 104-05.  Thus, "[k]nowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference." *Horn ex rel. Parks v. Madison County Fiscal Court*, 22 F.3d 653, 660 (6th Cir.), cert. denied, 513 U.S. 873 (1994).

Again, plaintiff does not claim that there was any delay in his receipt of pain medication or physical therapy or that any delay in receiving this treatment cause him any harm or injury.  Rather, plaintiff's claim is limited to his allegation that the delayed orthopedic consultation precluded him from having the surgery he

claims to have required.  Plaintiff claims that this was the prescribed treatment and that Dr. Lloyd interfered with plaintiff's ability to obtain this treatment.  Plaintiff offers no evidence that Dr. Lloyd was aware that surgery was recommended or required to treat plaintiff's injury, and nothing in plaintiff's medical records evidences such a recommendation.  Thus, plaintiff has not established that Dr. Lloyd purposefully acted or failed to act, despite his knowledge of prescribed treatment.

In reality, plaintiff's claim and evidence establish nothing more than a mere difference of opinion with the medical providers' assessment and prescribed treatment.  *See Thomas v. Coble*, 55 Fed.Appx. 748, 749 (6th Cir. 2003) ("[Plaintiff] and Dr. Coble clearly disagreed over the preferred medication to treat [Plaintiff's] pain.  However, this difference of opinion does not support an Eighth Amendment claim.").  The undersigned suggests that, given the extensive treatment plaintiff received, and his failure to offer any evidence that it was "so woefully inadequate as to amount to no treatment at all," plaintiff cannot satisfy the second prong of *Wilson*.

## IV.   RECOMMENDATION

For the foregoing reasons, the undersigned **RECOMMENDS** that defendant Lloyd's motion to dismiss, which is being treated as a motion for

summary judgment, be **GRANTED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 10 days of service, as provided for in 28 U.S.C. § 636(b)(1) and Local Rule 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 10 days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines any objections are

Report and Recommendation
Defendant Lloyd's Motion to Dismiss
*Blosser v. Gilbert*; 07-14031

without merit, it may rule without awaiting the response to the objections.


Date: February 19, 2009                    s/Michael Hluchaniuk
                                           Michael Hluchaniuk
                                           United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on February 19, 2009, I electronically filed the foregoing pleading with the Clerk of the Court using the ECF system which will send electronic notification to the following: Boyd E. Chapin, Jr. and G. Gus Morris and I certify that I have mailed by United States Postal Service the pleading to the following non-ECF participant: Chris Blosser, # 182437, STRAITS CORRECTIONAL FACILITY, 4387 West M-80, Kincheloe, MI 49785.


                                           s/James P. Peltier
                                           Courtroom Deputy Clerk
                                           U.S. District Court
                                           600 Church Street
                                           Flint, MI 48502
                                           (810) 341-7850
                                           pete_peltier@mied.uscourts.gov