UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

CHRIS BLOSSER,

        Plaintiff,                      Case Number 07-14031-BC
                                              Honorable Thomas L. Ludington

v.

TODD GILBERT, JASON THOMAS
CARPENTIER, DENNIS M. LLOYD,

        Defendants.
_____/

## ORDER OVERRULING PLAINTIFF'S OBJECTIONS, ADOPTING REPORT AND RECOMMENDATION, GRANTING DEFENDANT LLOYD'S MOTION TO DISMISS, AND DISMISSING CLAIMS AGAINST DEFENDANT LLOYD WITH PREJUDICE

      In his complaint [Dkt. # 1], pro se Plaintiff Chris Blosser alleges claims against Defendants Todd Gilbert, Jason Thomas Carpentier, and Dr. Dennis M. Lloyd.  Plaintiff's claims arise out of the circumstances surrounding his arrest by Patrolman Gilbert and Patrolman Carpentier, and his subsequent medical care overseen by the Medical Director of the Genesee County Jail, Dr. Lloyd.  The matter is now before the Court on a report and recommendation issued by Magistrate Judge Michael Hluchaniuk on February 19, 2009 [Dkt. # 81], regarding Defendant Lloyd's motion to dismiss [Dkt. # 27].  Defendants Gilbert and Carpentier did not join in Defendant Lloyd's motion to dismiss.  They filed a separate motion for summary judgment [Dkt. # 79] on January 23, 2009, which is not addressed by the report and recommendation now before the Court.

      As an initial matter, the magistrate judge recommended treating Defendant Lloyd's motion to dismiss as a motion for summary judgment because it relied extensively on materials outside Plaintiff's complaint.  Ultimately, the magistrate judge concluded that the motion should be granted because Plaintiff had not raised a genuine issue of material fact as to (1) whether he had a "serious

medical need," or (2) whether Defendant Lloyd was deliberately indifferent to that need, as is necessary for Plaintiff to maintain a due process cause of action. On or about March 9, 2009, Plaintiff filed objections to the magistrate judge's report and recommendation [Dkt. # 85 ]. On March 16, 2009, Defendant Lloyd filed a response to Plaintiff's objections [Dkt. # 87].

Plaintiff's objections largely restate his response to Defendant Lloyd's motion to dismiss. Nonetheless, Plaintiff clearly enumerated his objections, thus, the Court will address each objection to the extent that review of the magistrate judge's findings is appropriate. Based on the following analysis, the Court will overrule Plaintiff's objections, adopt the magistrate judge's report and recommendation, grant Defendant Lloyd's motion to dismiss construed as a motion for summary judgment, and dismiss Plaintiff's due process claim against Defendant Lloyd with prejudice.

I

Plaintiff alleges that during the course of his arrest on December 27, 2005, he was injured by Defendant Gilbert's and Defendant Carpentier's use of excessive force. His claims against Defendant Lloyd arise from the subsequent handling of his medical care by Defendant Lloyd. Following his arrest, Plaintiff was transported to the emergency room at Hurley Medical Center. There, Dr. Eric Barach diagnosed Plaintiff with a "ruptured long head left biceps tendon." [Dkt. # 27-3, p. 46]. Dr. Barach's written discharge or "special" instructions stated:

> You have a tear in the long head of the biceps tendon. need to make appointment in the orthopedic Clinic next Thursday. Wear sling for comfort, ice packs over shoulder as needed for pain and swelling.
> RX; FOR IBUPROFIN [sic] FOR PAIN ALSO

Plaintiff alleges that Dr. Barach told him that he required surgery right away in order to successfully reconnect the tendon to the bone.

Plaintiff alleges that the medical staff at the Genesee County Jail Medical Department

acknowledged the discharge instructions and that an appointment needed to be made. Plaintiff alleges that on January 3, 2006, he told Defendant Lloyd that he needed to see an orthopedic surgeon and that Defendant Lloyd stated that he was aware of the discharge instructions. Plaintiff alleges that Defendant Lloyd did not make an appointment for him. Plaintiff alleges that Defendant Lloyd told him that he was "too busy" and "not to worry about it," despite Plaintiff's explanation that he needed surgery right away. According to Plaintiff, he repeatedly questioned the medical staff about a follow-up appointment. Meanwhile, on or about December 29, 2005, the medical notes reflect that Plaintiff had a seizure. *See, e.g.*, [Dkt. # 27-3, pp. 22, 50]; [Dkt. # 27-4, p. 12].

On February 1, 2006, Defendant Lloyd referred Plaintiff to the orthopedic clinic for a "consult and surgical repair." [Dkt. # 27-4, p. 39]. In a section of the referral form entitled, "Results of a complaint directed physical examination with objective findings," Defendant Lloyd wrote that Plaintiff had an "obvious ruptured biceps tendon." *Id.* Defendant Lloyd also noted that Plaintiff was "currently using a sling."

On February 9, 2006, Dr. David Fernandez examined Plaintiff. Plaintiff alleges that Dr. Fernandez told him that, because of the delay in treatment, surgery could only be performed if Plaintiff had a very high physical or athletic demand. Plaintiff asserts that the doctor also told him that if a tendon is not repaired immediately, over time it will retract and become irreparable. Dr. Fernandez gave Plaintiff a prescription for physical therapy and pain medication. [Dkt. # 27-5, p. 9]. Dr. Fernandez's notes provide:

> Examination of patient/findings: This patient is a 40-year-old white male who had a history of altercation with some people a couple of days ago and he sustained injury to his left upper extremity. Apparently his left shoulder was dislocated and had tear of the long head of the biceps tendon. The patient as treated in immobilization and pain medication. He is here for followup.

> On physical examination the shoulder is in an anatomical position, full range of motion, however some pain on the terminal abduction, external rotation, otherwise looks pretty stable. There is no inferior laxity. On arm palpitation there is a bunched up mass of the biceps in the left arm which is consistent with a biceps tear, otherwise it does not have any other injury or complaints.
>
> Assessment and plan:
> This patient has been explained about being delayed on his biceps tendon rupture which is generally not treated if the patient does not have very high physical or athletic demand. The patient understands the consequences of possibility of having a weak elbow flexion and he has also been explained about the importance of physical therapy and rehabilitation for his shoulder. The patient might have another dislocation or turn out to be recurrent dislocation, as the one time dislocation tend to recur later on. The patient is a prisoner and is brought here by the police officers. The prognosis and the situation have been explained to the police as well. I have given a prescription for physical therapy, pain medications and range of motion for his elbow and shoulder.

[Dkt. # 27-5, p. 10].

II

Plaintiff has made five objections to the magistrate judge's report and recommendation. Each will be discussed separately below.

A

Plaintiff's first objection is that the magistrate judge erred in applying standards developed in Eighth Amendment jurisprudence to his due process claim brought pursuant to the Fourteenth Amendment. Plaintiff contends that the Eighth Amendment is not applicable to the circumstances of the case because he was a pretrial detainee when his claims arose rather than a prisoner. Plaintiff contends that the error is prejudicial because it is easier for a plaintiff to establish a constitutional violation under the Fourteenth Amendment than the Eighth Amendment.

In response, Defendant Lloyd states that Plaintiff is correct in his assertion that "a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law," quoting *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). Defendant Lloyd also contends that the standard

imposed for a violation of the Fourteenth Amendment is the same as for the Eighth Amendment, citing *Roberts v. City of Troy*, 773 F.2d 720, 723 (6th Cir. 1985).

In *Roberts*, the Sixth Circuit held that while a pretrial detainee is "not within the protection of the eighth amendment . . . the eighth amendment rights of prisoners are analogized to those of detainees under the fourteenth amendment, to avoid the anomaly of extending greater constitutional protection to a convict than to one awaiting trial." 773 F.2d at 723. In other words, "[p]retrial detainees have a constitutional right under the Fourteenth Amendment to the same protection afforded convicted prisoners who have serious medical needs." *Crocker ex rel. Estate of Tarzwell v. County of Macomb*, 119 F.App'x 718, 722 (6th Cir. Jan. 4, 2005) (unpublished) (citing *Heflin v. Stewart County*, 958 F.2d 709, 714 (6th Cir. 1992)). Thus, Eighth Amendment jurisprudence is applicable to pretrial detainees' claims brought for alleged violations of the Fourteenth Amendment, such that "jail officials violate detainees' due process rights when the officials 'exhibit a deliberate indifference to the medical needs of detainees that is tantamount to an intent to punish.' " *Id.* (citing *Danese v. Asman*, 875 F.2d 1239, 1243 (6th Cir. 1989)).

Based on the above, the Court will overrule Plaintiff's first objection.

B

Plaintiff's second objection is to the magistrate judge's reliance on the fact that Plaintiff did not argue that there was any delay in his receipt of pain medication or physical therapy or that any delay in receiving such treatment cause him any harm or injury. Plaintiff contends that he did not specifically argue those points because they should have been "readily seen and understood," and because they "pale in comparison to his surgery issue." Plaintiff states that it was "obvious" that he endured "physical pain and mental anguish during the period of time in which he was delayed

on his orthopedic appointment." Plaintiff states that the magistrate judge should have observed the Supreme Court's admonition in *Haines v. Kerner*, 404 U.S. 519, 520 (1972), that a pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers."

In response, Defendant Lloyd states that Plaintiff concedes that he did not argue that there was any delay in his receipt of pain medication or physical therapy, or that any delay in receiving such treatment caused him harm or injury. Defendant Lloyd contends that liberally construing Plaintiff's pleadings does not aid Plaintiff because he never raised the issue in any of his filings in this action and never alleged any delay in receiving pain medication or physical therapy.

While it is generally true that pro se pleadings are liberally construed, "courts need not conjure up unpleaded facts to support . . . conclusory (allegations)." *Hurney v. Carver*, 602 F.2d 993, 995 (1st Cir. 1979) (quoting *Slotnick v. Striviskey*, 560 F.2d 31, 33 (1st Cir. 1977), *cert. denied*, 434 U.S. 1077 (1978)). *See also Taylor v. Johnson*, 762 F.2d 1012 (table), 1985 WL 13176, at *1 (6th Cir. Apr. 3, 1985) (affirming the district court's dismissal of the pro se plaintiff's complaint when "there were no factual averments to support the conclusory allegations of discrimination," and citing *Hurney*, 602 F.2d at 995).

In this case, the magistrate judge correctly noted that Plaintiff did not argue that there was any delay in his receipt of pain medication or physical therapy or that any delay in receiving such treatment cause him any harm or injury. It may have been "obvious" that Plaintiff was in pain, but Plaintiff has not advanced any evidence to show that he did not receive pain medication or physical therapy as prescribed. Thus, Plaintiff's second objection will be overruled.

C

Plaintiff's third objection is that the magistrate judge incorrectly concluded that Plaintiff's visit to the jail medical clinic on January 5, 2006, was consistent with the emergency room discharge instructions. Plaintiff emphasizes that the discharge notice stated that Plaintiff needed an appointment at the "orthopedic clinic," rather than the "jail medical clinic." Plaintiff did not visit the orthopedic clinic until February 9, 2006.

In response, Defendant Lloyd contends that the "minor inaccuracy" is not relevant to any material issue in the case, because it does not give rise to a constitutional violation. Defendant Lloyd states that the material issues are (1) whether Plaintiff suffered any damages as a result of Defendant Lloyd's failure to follow the discharge instructions, and (2) whether Defendant Lloyd was aware of, but disregarded, any excessive risk to Plaintiff's health or safety. Defendant Lloyd contends that the magistrate judge correctly noted that "nothing in Dr. Barach's treatment notes or discharge instructions suggest that Plaintiff required surgery, let alone immediate surgery."

The Court finds that whether the magistrate judge's statement that Plaintiff "was seen in the jail medical clinic for a follow-up on January 5, 2006, per the emergency room discharge instructions," is inaccurate is immaterial to the issues in the case. In making that statement, the magistrate judge was making the point that "there is no question that Plaintiff's condition required, and that he received, treatment." Thus, whether Plaintiff received follow-up treatment in the orthopedic clinic or the jail medical clinic is not material to the question of whether he received treatment. Thus, Plaintiff's third objection will be overruled.

D

Plaintiff's fourth objection relates to the magistrate judge's conclusion that Plaintiff could

not establish that he had a "serious medical need," for which treatment was "so woefully inadequate as to amount to no treatment at all." *Westlake v. Lucas*, 537 F.2d 857, 860-61 (6thCir. 1976). First, Plaintiff contends that the magistrate judge erred in characterizing as inadmissible hearsay, his testimony that he told Defendant Lloyd that Dr. Barach told him that he required surgery, and his testimony that Dr. Fernandez told him that "if you would have showed up on time I could have fixed your arm." Plaintiff contends that his statements fall within the hearsay exception of Fed. R. Evid. 803(4). Second, Plaintiff contends that the discharge notice from Dr. Barach establishes a "serious medical need" by itself because Plaintiff's need for medical attention was "so obvious that even a layperson would easily recognize the necessity . . . ." Thus, he contends that he did not need to submit to the magistrate judge any "verifying medical evidence."

In response, Defendant contends that Fed. R. Evid. 803(4) is inapplicable to Plaintiff's alleged statements to Defendant Lloyd because the exception pertains to statements made by a patient to a doctor or medical provider relating to their own condition, not to statements made by a physician to a patient about an alleged need for treatment not otherwise documented in the medical records. According to Defendant Lloyd, Plaintiff is not attempting to prove that he made certain statements to Defendant Lloyd, rather, he is attempting to prove the truth of the matter asserted, i.e., that Dr. Barach and Dr. Fernandez believed that Plaintiff required immediate surgery. Defendant emphasizes that Dr. Barach's discharge note does not indicate that Plaintiff required surgery, nor do Dr. Fernandez's notes indicate that Plaintiff would have been a candidate for surgery.

Even if Plaintiff's testimony was admissible under Fed. R. Evid. 803(4), such evidence would not preclude the Court from granting summary judgment in favor of Defendant Lloyd. Plaintiff has advanced no evidence to corroborate his statements and his statements are inconsistent

with the medical evidence in the record. No medical evidence indicates that Plaintiff required surgery, that Plaintiff was considered a candidate for surgery by any of his treating physicians, or that any delay in making an appointment in the orthopedic clinic harmed Plaintiff. Further, as the magistrate judge noted, the American Academy of Orthopedic Surgeons has explained that nonsurgical treatment is usually all that is required for Plaintiff's type of injury. [Dkt. # 81, p. 17 n.2]. Thus, any need for surgery, rather than pain medication and physical therapy, would not have been "obvious," as Plaintiff contends. Based on the above, Plaintiff's fourth objection will be overruled.

E

Plaintiff's fifth objection relates to the magistrate judge's conclusion that Defendant Lloyd was sufficiently culpable to establish the "subjective component" of the due process analysis. Plaintiff contends that even if the Court does not consider Plaintiff's testimony that he told Defendant Lloyd that he required surgery, Defendant Lloyd acknowledged on the referral to the orthopedic clinic that Plaintiff had an "obvious ruptured biceps tendon" and was wearing a sling. Plaintiff indicates that Defendant Lloyd may dispute that the discharge instructions suggest that Plaintiff required surgery, but he cannot refute the fact that it diagnosed his injury and gave a certain date and place for follow-up treatment. Finally, Plaintiff objects that the magistrate judge "seems to be suggesting that Defendant Lloyd should get a free pass because although he delayed Plaintiff on his treatment, he ultimately got him there" because the report and recommendation states that Plaintiff did not offer any evidence that the treatment that he received was "so woefully inadequate as to amount to no treatment at all."

In response, Defendant Lloyd contends that Plaintiff's diagnosis of a ruptured tendon, alone,

does not warrant a finding that Plaintiff required immediate surgery to treat his injury. Defendant Lloyd also emphasizes that there is no evidence that he was aware of any need for Plaintiff to have immediate surgery. Defendant Lloyd contends that there is no evidence that Plaintiff was ever a candidate for surgery and further states that Plaintiff's recent seizure would have prevented any surgery that could otherwise have been contemplated.

Even if Plaintiff's statement to Defendant Lloyd that Dr. Barach had told him that he required surgery was admissible as urged by Plaintiff in his fourth objection, nothing in Plaintiff's medical records suggests that Dr. Barach's alleged recommendation was correct. Moreover, even if surgery had been a possibility or recommended by Dr. Barach, nothing in the evidence advanced suggests that Defendant Lloyd's decision to not pursue that course of action was "deliberately indifferent." Indeed, quite the opposite is true when the evidence shows that at the time that Plaintiff insists he required surgery, he had recently suffered at least one seizure, making surgery unsafe. Based on the above, Plaintiff's fifth objection will be overruled.

### III

Accordingly, it is **ORDERED** that Plaintiff's objections [Dkt # 85] are **OVERRULED**, the magistrate judge's report and recommendation [Dkt # 81] is **ADOPTED**, Defendant Lloyd's motion to dismiss, construed as a motion for summary judgment [Dkt # 27] is **GRANTED**, and Plaintiff's due process claims against Defendant Lloyd are **DISMISSED WITH PREJUDICE**.

                                            s/Thomas L. Ludington
                                            THOMAS L. LUDINGTON
                                            United States District Judge

Dated: March 31, 2009

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 31, 2009.

        s/Tracy A. Jacobs
        TRACY A. JACOBS